TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
VANESSA A KUBOTA
Arizona State Bar No. 036850
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Joe.Koehler@usdoj.gov
Vanessa.Kubota@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-00339-PHX-JJT |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT[1]** |
| vs. | |
| Luis Donaldo Garcia Lopez, | |
| Defendant. | |

This Court should join this and other districts in the Ninth Circuit and reject Defendant's facial challenge to the constitutionality of 18 U.S.C. § 922(g)(5)(A) (Doc. 41).

I.   **Relevant Facts and Procedural Background**

Defendant was admitted to the United States via a non-immigrant B1/B2 visa in 2013. He entered the United States on a one-year permit in 2020. That permit expired in 2021, and Defendant's visa expired in 2023, but he remained in the United States and was

---

[1] Defense counsel filed a (five-page) dispositive motion on the deadline for filing pretrial motions, five days before the parties' final pretrial conference. Although his motion is technically timely, by raising a dismissal motion at such a late stage—and under the auspices of a pretrial filing subject to the Court's four-page limit—defense counsel has short-circuited the government's ability to comprehensively respond to his arguments. In any case, if the Court decides that more comprehensive briefing would be helpful, the government requests the Court set reasonable deadlines for the parties to supplement their briefing on this issue.

found with a gun on February 21, 2025. (Doc. 27.) Although Defendant would not have been authorized to possess a gun even if his visa were still valid, the United States indicted him under § 922(g)(5)(A), which makes it a crime for undocumented non-citizens who are "illegally or unlawfully in the United States" to possess a gun. *See United States v. Elrawy*, 448 F.3d 309, 316 (5th Cir. 2006) ("[O]nly aliens who were admitted to the United States on a non-immigrant visa and maintain *lawful* "non-immigrant" status can be prosecuted under § 922(g)(5)(B).").

**II.     Argument**

Defendant argues first that, as an undocumented noncitizen, he is among "the people" for Second Amendment purposes. (Doc. 41 at 4.) The Ninth Circuit has avoided deciding the "large and complicated" question of "whether unlawful aliens are included in the scope of the Second Amendment," *United States v. Torres*, 911 F.3d 1253, 1261 (9th Cir. 2019) (citation omitted), but it has "assume[d]" as much in the context of nonimmigrant visa holders, *see United States v. Singh*, 979 F.3d 697, 724 (9th Cir. 2020). Still, the question is far from settled when it comes to undocumented aliens who are "illegally or unlawfully" present. *See United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) ("Nothing in *Bruen* casts doubt on" the Eighth Circuit's interpretation that "unlawfully present aliens are not within the class of persons to which the phrase 'the people' refers."); *Singh*, 979 F.3d at 724 ("Nonimmigrant aliens, like those unlawfully present, are neither citizens nor members of the political community."). Here, the government will assume without conceding that prong one applies.

Defendant argues next that 18 U.S.C. § 922(g)(5) fails the "historical tradition" test in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). (Doc. 41 at 3.) Defendant was indicted under prong (A) of the statute, so this Court should consider only whether § 922(g)(5)(A) is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 3. It is.

To meet its burden under the second prong, the government must demonstrate a "well-established and representative historical analogue," though it need not identify a

1  "historical twin." *Id.* at 30. To gauge whether § 922(g)(5)(A) and historical gun ownership
2  restrictions are "relevantly similar," the Court should consider at least two metrics: (1)
3  whether § 922(g)(5)(A) and historical restrictions "impose a comparable burden on the
4  right of armed self-defense," and (2) "whether that burden is comparably justified." *Bruen*,
5  597 U.S. at 3. "[T]he appropriate analysis involves considering whether the challenged
6  regulation is consistent with the principles that underpin our regulatory tradition." *United*
7  *States v. Rahimi*, 602 U.S. 680, 692 (2024).

        Here, the United States can show that § 922(g)(5)(A) is relevantly similar to "founding-era laws prohibiting the possession of firearms by those who did not swear an oath of allegiance to the sovereign." *United States v. Gil-Solano*, 699 F. Supp. 3d 1063, 1070 (D. Nev. 2023). "Before the founding of this country, colonial governments often 'prohibited any white person unwilling to affirm his allegiance to the British Crown from collecting firearms.'" *Id.* (citations omitted). Individual states did the same. *Id.* (citing historical analogues). As multiple courts have affirmed, there was a "well-established" tradition of barring firearms possession for those who did not swear their loyalty to the government. *Id.*; *see also United States v. Ali*, No. CR-24-7592-TUC-AMM, 2025 WL 1732852, at *8 (D. Ariz. June 23, 2025) (joining "other district courts in the Ninth Circuit" and "conclude[ing] post-*Bruen* that § 922(g)(5)(A)'s prohibition on possession of a firearm by an unlawfully present alien is sufficiently rooted in the history and tradition of the United States").

        Defendant insists that loyalty oaths were different because they were temporary, whereas § 922(g)(5) represents a "permanent ban on possession of a firearm . . . with no redress outside of becoming a legal permanent resident or citizen." (Doc. 41 at 4–5.) But an undocumented alien who is at one moment "illegally or unlawfully in the United States" is not permanently deprived of his right to gun possession any more than a person who has not yet sworn a loyalty oath to the United States. Indeed, "[t]hese allegiance-based classifications are admittedly rough, flawed attempts to distinguish between those who are likely to 'comply with certain communal obligations' and 'abide by the norms of civic

society' and those who are unlikely to do so[, b]ut they are relevantly similar, nonetheless." *Gil-Solano*, 699 F. Supp. 3d at 1072 ("Relative to § 922(g)(5)(A), early American laws requiring loyalty oaths imposed comparable burdens on firearms possession, with comparable justifications.").

Defendant argues that, unlike people who voluntarily decided not to swear a loyalty oath to the United States, "many individuals are categorically barred from obtaining admission into the United States for reasons outside their own volition." (Doc. 41 at 5.) While this distinction may be true, it "does not reflect upon the comparability of historical oath-based analogues, but rather is a concern [Defendant] has with our nation's immigration policy." *Gil-Solano*, 699 F. Supp. 3d at 1072. "Therefore, despite not being a perfect match, historical laws banning firearms ownership for those who refused to swear allegiance to the sovereign are analogous to § 922(g)(5)(A)'s prohibition directed at undocumented immigrants." *Id.* This Court should follow the reasoning adopted by this and "other districts in the Ninth Circuit" and conclude "that § 922(g)(5)(A)'s prohibition on possession of a firearm by an unlawfully present alien is sufficiently rooted in the history and tradition of the United States." *Ali*, 2025 WL 1732852, at *8.

### III. Conclusion

For those reasons, this Court should deny Defendant's motion to dismiss and find 18 U.S.C. § 922(g)(5)(A) to be constitutional under *Bruen*.

Respectfully submitted this 28th day of November, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*Vanessa Kubota*
JOSEPH E. KOEHLER
VANESSA A. KUBOTA
Assistant U.S. Attorney

- 4 -