TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
VANESSA A KUBOTA
Arizona State Bar No. 036850
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Joseph.Koehler@usdoj.gov
Vanessa.Kubota@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-0339-PHX-JJT |
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REOPEN DETENTION** |
| v. | |
| Luis Donaldo Garcia Lopez, | |
| Defendant. | |

Defendant is wanted for allegedly beheading someone in Mexico. (Doc. 13 at 2.) When immigration officers arrested him in Phoenix, Arizona, he had a loaded gun. (Doc. 1 at 2.) His prior authorization to stay in the United States had long since expired. (*Id.*) Those facts have not changed. Nor should the order of detention. Without new material information, there is no basis to reopen detention. And even if the Court were to consider reopening detention, it should reach the same conclusion as that of the Magistrate Judge.

I.    **Facts and Relevant Procedural History**

This saga began when Mexican authorities alerted the State Department that Defendant was wanted on a homicide warrant. (*Id.*) In lieu of extradition, the State Department asked immigration officials if they could use immigration enforcement channels to facilitate Defendant's return to Mexico. (*Id.*) Immigration databases confirmed that Defendant had overstayed his visa (and entry permit), making him amenable to

removal. (Doc. 1 at 2.) When officers pulled Defendant over to arrest him on an immigration warrant, Defendant had a loaded gun in his lunchbox. (*Id.*) Defendant's unlawful presence and possession of a gun triggered this § 922(g)(5)(A) charge.

After a full detention hearing, the Magistrate Judge deemed Defendant a flight risk and ordered him detained. (Doc. 15 at 2.) Defendant never sought review of that decision. On January 13, 2026, the parties convened a four-day jury trial, which resulted in a hung jury. (Docs. 77–83.) On January 21, 2026, the government submitted notice of its intent to seek a retrial. (Doc. 93.) The parties conferred over email about possible trial dates, and the government expressed its desire to retry the case as quickly as possible, noting the length of time that Defendant has already been in custody but declining to agree to his release.

On January 27, 2026, Defendant moved to reopen detention, arguing that he was not a flight risk or a danger and urging that a release order would rescue him from having to choose between exercising his speedy trial rights and allowing adequate time for his counsel to prepare for the retrial. (Doc. 95.) At the telephonic status conference on January 29, 2026, the Court set a retrial date for February 24, 2026. (Doc. 98.) The Court acknowledged defense counsel's concerns but noted that February was the best month for the Court's calendar to set the retrial, especially given defense counsel's other pending case, the Court's availability, and Defendant's speedy trial rights.

## II.     Argument

Defendant now moves to reopen the detention order. Under the Bail Reform Act, the Court may reopen a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

"Information has a material bearing on the issue when it increases the chances the defendant appears for his criminal hearing or decreases the danger the defendant poses to

an individual or the community as a whole." *United States v. Hollingberry*, No. CR-20-00673-001-PHX-MTL, 2021 WL 3912850, at *2 (D. Ariz. Sept. 1, 2021) (citation omitted). Defendant bears the burden to show that the information supporting his motion "was not known to the movant at the initial detention hearing." *Id.* "If the information was available at the initial detention hearing, the issue of detention should not be reopened." *Id.*

Defendant fails to make a threshold showing of previously unknown information that is material to the issue of detention. *See id.* Instead, he tries to tee up a conflict between his speedy trial rights (made more exigent by his continued detention) and his right to ensure that his counsel has adequate time to prepare for a retrial. (Doc. 95 at 2.) Second, he argues that he isn't a flight risk or a danger. (*Id.* at 3.) Both arguments fail.

A. Defendant's Self-Generated Constitutional Conflict

In what is essentially an indirect request for a continuance, Defendant sets up a conflict between his right to a speedy trial and his right to adequate representation. (*Id.* at 2.) Such a conflict exists to some degree in every criminal case in which a defendant is held in custody pending trial; and courts must undertake a balancing test to gauge when to grant continuances and when to forge ahead with an earlier trial date. *See United States v. Loud Hawk*, 474 U.S. 302, 313 (1986) (describing the four-part balancing test). In a complex case, a defendant's right to competent representation may override his right to a speedy trial. *See United States v. Tanh Huu Lam*, 251 F.3d 852, 858 (9th Cir. 2001) (declining to let "a defendant's interest in a speedy trial" eclipse "his attorney's legitimate assessment of the complexity of a case and his corresponding need to prepare" for a retrial). This is not a complex case.

Most of the meaty pretrial issues have already been briefed and decided. The defense has already seen and heard the government's trial evidence. The government anticipates filing two more pretrial motions, which will likely be resolved at the parties' pretrial conference. As for trial preparation, the testimony in the first trial lasted approximately eight hours and involved eight witnesses. On retrial, the government intends to call only six of those witnesses. Most of the government's exhibits will remain the same.

### B. Defendant's Detention Arguments

Defendant argues he is not a flight risk or danger because (a) he wasn't technically "fleeing" from the Mexican arrest warrant, (b) his gun was safely secured in his lunchbox, (c) he was cordial with the officers who arrested him, (d) he has no incentive to leave the United States, (e) the government should not be "judgment[al]" about his DUI arrest, (f) his alienage should not serve as a basis for detention, (g) the charge is not a presumption case, and (h) some of his family lives in Phoenix. (Doc. 95 at 3–4.) None of those factors support reopening the issue of detention. *See* 18 U.S.C. § 3142(f)(2).

For starters, Defendant's claim that he is technically not a "fugitive" because he didn't know about the Mexican arrest warrant is without merit. "A fugitive charged with a crime in another country is already by definition in flight or deliberately absent from that jurisdiction." *Matter of Extradition of Morrell*, No. 3:24-MJ-05020-TLF, 2024 WL 756017, at *3 (W.D. Wash. Feb. 23, 2024); *see also United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges.") (citation omitted). And even if he wasn't aware of the Mexican arrest warrant before, he most certainly knows about it now, increasing his likelihood to flee.

As to his other assertions, the Magistrate Judge had the same information below, and it properly found that no conditions could reasonably assure Defendant's appearance at future proceedings.[1] Because nothing has changed today, this Court should decline to reopen detention.

//

//

---

[1] Although the Magistrate Judge did not have the detailed proffered testimony about Defendant's "cordial" behavior when arrested, Defendant cannot claim that this version of the arrest is based on previously unknown information.

- 4 -

### III. Conclusion

For the reasons expressed here and in the government's original detention memo (Doc. 13), this Court should deny Defendant's motion.

Respectfully submitted this 30th day of January, 2026.

                    TIMOTHY COURCHAINE
                    United States Attorney
                    District of Arizona

                    *s/Vanessa A. Kubota*
                    JOSEPH E. KOEHLER
                    VANESSA A. KUBOTA
                    Assistant U.S. Attorneys