JON M. SANDS
Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, Arizona 85007
Telephone: 602-382-2700

LAURA LYNN SANDOVAL-GREEN
CA Bar No. 337692
Assistant Federal Public Defender
LauraLynn_Sandoval@fd.org
MICHAEL S. RYAN #018139
Assistant Federal Public Defender
michael_ryan@fd.org
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | CR-25-00339-PHX-JJT |
|---|---|
| Plaintiff, | **TRIAL MEMORANDUM** |
| vs. | |
| Luis Donaldo Garcia Lopez, | |
| Defendant. | |

At the first trial in this case, the jury was asked to decide whether Mr. Garcia knew on February 21, 2025 that he was unlawfully in the United States. The jury deadlocked on that issue in a near-even split. In preparation for retrial, Mr. Garcia submits this memorandum to address an evidentiary issue identified at the first trial, which bears directly on his knowledge at the time of his arrest: the relevance of the April 28, 2020 overstay date.

As explained further below, whether Mr. Garcia in fact overstayed his visa in April 2020, and whether he was aware of this overstay, are open questions for the jury to decide. In the event that the jury concludes that he knowingly overstayed in April 2020, then they may also conclude that Mr. Garcia believed he had implied consent to return to and remain in the United States at the time of his arrest. In the alternative, the government might contend and the jury might conclude that April 28, 2020 was an erroneous overstay date—one embraced by multiple federal government agencies. In that case, the date is also

1

relevant to show that Mr. Garcia could not have known when he was due to leave the U.S.—the government itself was confused about when his authorized period of stay expired.

## **BACKGROUND**

On February 21, 2025, ICE Deportation Officer Chamorro served Mr. Garcia with a notice to appear (NTA). Gov. Trial Ex. 6. The NTA states that Mr. Garcia was "admitted to the United States at Nogales, AZ on October 30, 2019 as a non immigrant B2 Tourist for Pleasure with authorization to remain in the United States for a temporary period not to exceed April 28, 2020." *Id.* at 1. The NTA further charges that Mr. Garcia "remained in the United States beyond April 28, 2020 . . . ." *Id.* at 2. Chamorro repeated these claims—including the relevant dates—in a report authored the same day.

On February 22, 2025, the government filed the complaint in this case, supported by a statement of probable cause by ATF Special Agent Lowell Farley. The complaint alleges, "Previously, GARCIA entered the United States using a B2 Visa. The Visa expired April 28, 2020. Since that date, he has had no status which would permit him to remain in the United States lawfully." Dkt. No. 1, at 4 n.1. The government later charged Mr. Garcia by indictment and then superseding indictment, neither of which specify an overstay date.

On March 6, 2025, Mr. Garcia appeared before the Magistrate Judge for a detention hearing. In support of its argument for detention, the government submitted a memorandum that again identified Mr. Garcia's overstay date as April 28, 2020. The government wrote, "Record checks revealed that Defendant once had a B2 visa, but that visa had expired on April 28, 2020. . . . There are no records of Defendant applying for any extensions on his visa or seeking permission to reapply for admission." Dkt. No. 13, at 2.

Documents in discovery repeat the April 28, 2020 overstay date. Significantly, a Department of State record states that he "last arrived in US 30-Oct-2019, AUD [admit until date] 28-Apr-2020, also overstay." Def. Trial Ex. 34, at 3; *see also* Dkt. No. 13-2,

2

1 at 3 (DHS document repeating the same claims).  The document states that this
2 information was entered on July 13, 2021.  *Id*.  And State Department witness Michael
3 Reynolds confirmed that "a State Department employee entered this information back in
4 July 13th of 2021."  Trial Tr. Day 3, at 463:17–20.

5       Mr. Garcia mounted a defense based on the April 28, 2020 overstay date.  The
6 central issue at trial was whether Mr. Garcia knew that he had overstayed his visa when
7 he was arrested on February 21, 2025.  Defense counsel argued that Mr. Garcia could not
8 have known because the government itself was confused about his date of overstay.
9 Moreover, the government had multiple opportunities after April 2020 to inform Mr.
10 Garcia that he had overstayed.  Because it did not so inform him, or attempt to remove
11 him, Mr. Garcia believed he had implied consent to remain in the country.

12       The first opportunity the government had to notify Mr. Garcia of his overstay was
13 on July 26, 2020 when Mr. Garcia presented at Customs at the Phoenix airport.  Customs
14 and Border Protection Officer James Townsend testified that he interviewed Mr. Garcia
15 at secondary inspection and admitted him.  When asked whether he told Mr. Garcia "that
16 he overstayed his visa back in April 2020," Townsend said, "I didn't know that he did."
17 Trial Tr. Day 2, at 337:10-12.  The government had another opportunity to tell Mr. Garcia
18 about his overstay when he was arrested on a traffic violation on June 19, 2021.  Chamorro
19 testified that ICE "screened him" on that date.  Trial Tr. Day 2, at 250:24–251:3.  But
20 they did not initiate removal proceedings until February 2025.

21       Defense counsel attempted to ask Chamorro about the analysis conducted during
22 the June 19, 2021 screening, specifically the application of a Department of Homeland
23 Security memorandum regarding removal priorities.  The government objected on
24 relevance grounds.  A broader discussion ensued outside of the presence of the jury.  The
25 government argued that the April 28, 2020 date on the NTA was simply a mistake by
26 Chamorro.  The correct overstay date was "July 24th of 2021."  Trial Tr. Day 2 at 257:4.
27 The government further claimed, "If he had been flagged as an overstay, he would not
28 have been granted entry on July 26th of 2020."  *Id*. at 256:5–7.  Defense counsel asserted

1  that the April 28, 2020 overstay was "in their probable cause statement" and "throughout
2  the discovery." *Id*. at 257:20-22.  The defense was not notified that Chamorro had made
3  a mistake in the NTA or his report.  *Id*. at 251:21-22.
4        The Court concluded, "listing the overstay as of April 28th of 2020 [on the NTA]
5  is irrelevant to the argument because the defendant had no knowledge of that assertion
6  that there was an overstay in April of 2020, until after his arrest in the instant charge."
7  *Id*. at 268:15-19.  "[S]eparately then going into the policy prioritizing certain offenses,
8  certain criminal offenses as qualifiers for priority deportation or removal and the fact that
9  that policy changed for all of these same reasons, timing, timing, timing is not relevant
10  . . . . so I won't permit further exploration of that policy."  *Id*. at 269:17-25.  The Court
11  then said, "I don't know that I could encapsulate my ruling to say that the date of April
12  28th is not relevant, although it's close."  *Id*. at 270:25-271:2.  Mr. Garcia respectfully
13  submits this memorandum to clarify that the April 28, 2020 overstay date shows that he
14  had reason to believe he was authorized to be in the U.S. at the time he allegedly possessed
15  a firearm—or at a minimum it illustrates that it would have been difficult for Mr. Garcia
16  to know that he was unlawfully in the U.S. at that time.

## ARGUMENT

18        An important threshold issue requires clarification: The government did not and
19  cannot assert that Mr. Garcia *did not* overstay his April 28, 2020 admit until date.  The
20  evidence shows that Mr. Garcia entered the U.S. on October 30, 2019 and again on July
21  26, 2020.  Gov. Trial Ex. 8.  He must have departed at some point between those dates,
22  but Customs and Border Protection does not track departures, except by air.  There is no
23  evidence that Mr. Garcia took an outbound flight between October 2019 and July 2020.
24  Accordingly, Townsend confirmed that Mr. Garcia's departure "[c]ould have been any
25  day," "[w]e don't know what day."  Trial Tr. Day 2, at 332:23-333:1.  Presumably for
26  this reason, the government was careful to specify at sidebar that Mr. Garcia was not
27  "flagged" as an overstay when he presented at Customs in July 2020—not that he was not
28  in fact an overstay.  The jury could reasonably conclude—just as documents by DHS,

1  ATF, and the State Department claim—that Mr. Garcia had overstayed as of April 28,
2  2020. And despite that overstay, he was allowed back into the country in July 2020 and
3  then allowed to remain in June 2021.
4  　　　Even if the date on the NTA was an error by Chamorro, that does not make the
5  date irrelevant to the government's knowledge or Mr. Garcia's. At trial, the government
6  attempted to portray the April 28, 2020 date as a typographical error by a single
7  government actor in February 2025. But the evidence shows that several federal agencies
8  believed as early as July 2021 that Mr. Garcia had overstayed. A document by the State
9  Department (Def. Trial Ex. 34), which appears to have been reproduced in a DHS
10 database (Dkt. No. 13-2) states that Mr. Garcia was an "overstay" as of April 28, 2020.
11 This part of the document was authored on July 13, 2021—nearly four years prior to
12 Chamorro's alleged "mistake." ATF Special Agent Farley repeated the April 28, 2020
13 overstay date. Dkt. No. 1, at 4 n.1. And the government's lawyer represented this
14 overstay date to the Court in a March 2025 pleading. Dkt. No. 13, at 2. There is no
15 evidence that the State Department, ATF, and the government's attorney all
16 coincidentally made the same typographical "mistake" as Chamorro.
17 　　　A more reasonable inference is that the government correctly believed Mr. Garcia
18 had overstayed in April 2020, but later realized this date was inconvenient for its theory
19 of the prosecution and attempted to abandon it. That is a matter of trial strategy, not fact
20 or relevance. As noted, the government cannot assert that Mr. Garcia did not overstay in
21 April 2020. The jury could reasonably agree with DHS, ATF, and the State Department
22 that he did. Moreover, the jury could believe—as the government invites them to—that
23 Mr. Garcia would have been aware of his overstay, even without receiving an NTA. *See*
24 Trial Tr. Day 3, at 502:14-17 (Mr. Garcia "is an experienced traveler. He knows the
25 importance of the expiration date on his visa and he sure as heck knows the importance
26 of the expiration date on his I-94 entry permit. . . .") The jury could also then infer that
27 Mr. Garcia believed the government turned a blind eye to his overstay when it readmitted
28 him in July 2020 and allowed him to remain in June 2021. Based on these government

actions, the jury could also conclude that Mr. Garcia believed he had implied consent to be in the country when he was arrested.

Alternatively, the above evidence is relevant to show that at the time of his arrest, the government itself was confused about when Mr. Garcia's authorization to be in the U.S. lapsed. The government explained at sidebar that two different policies were applied to Mr. Garcia, allowing him to stay for six months when he entered in 2019 and one year when he entered in 2020. Trial Tr. Day 2, at 255:23-256:24. Given the complicated nature of this country's immigration policies, and that multiple government agencies may have miscalculated his overstay date, then Mr. Garcia may also have been mistaken about whether he had overstayed on the date of his arrest.

## **CONCLUSION**

Mr. Garcia's knowledge regarding his immigration status on the day of his arrest is the central issue in this case. Whether he (1) in fact overstayed his April 28, 2020 admit until date, (2) knew of this overstay, and (3) believed that the government knew of this overstay, are all questions of fact that bear directly on that issue. The jury should be permitted to hear all evidence and argument relevant to these questions.

Respectfully submitted:  February 10, 2026.
JON M. SANDS
Federal Public Defender

 *s/Laura Lynn Sandoval-Green*
LAURA LYNN SANDOVAL-GREEN
MICHAEL S. RYAN
Assistant Federal Public Defenders