JON M. SANDS
Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, Arizona 85007
Telephone: 602-382-2700

LAURA LYNN SANDOVAL-GREEN
CA Bar No. 337692
Assistant Federal Public Defender
LauraLynn_Sandoval@fd.org
MICHAEL S. RYAN #018139
Assistant Federal Public Defender
michael_ryan@fd.org
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | CR-25-00339-PHX-JJT |
|---|---|
| Plaintiff, | **RESPONSE IN OPPOSITION TO MOTION *IN LIMINE* REGARDING ICE RAIDS** |
| vs. | |
| Luis Donaldo Garcia Lopez, | |
| Defendant. | |

The government's motion *in limine* is essentially an untimely objection to a single reference to ICE raids during closing argument at the first trial. The context in which ICE raids were mentioned—and the fact that the government did not object—shows that the reference did not run afoul of Federal Rule of Evidence 403. Whether such a reference would be appropriate at retrial cannot be evaluated in a vacuum. Accordingly, the motion should be denied.

The government claims that any reference to ICE raids would be irrelevant because "the surge in ICE enforcement activity (and media coverage)" postdates Mr. Garcia's arrest in February 2025. Dkt. 109, at 2. The government does not cite any authority for this claim. But a quick Google search shows it is incorrect. At least one media outlet reported that "US immigration enforcement officials arrested more people in the first 22 days of February 2025 than in any month over the last seven years, according to

1

1  . . . Department of Homeland Security (DHS) data." *US arrests more immigrants in*
2  *February 2025 than any month in last seven years*, The Guardian,
3  https://www.theguardian.com/us-news/2025/mar/13/us-immigration-arrests-february-
4  2025. ICE itself reported on February 10, 2025 that it "conducted a series of enhanced
5  immigration enforcement operations across the nation between Feb. 1 and Feb. 7." *ICE*
6  *operations between Feb. 1 and Feb. 6*, U.S. Immigration and Customs Enforcement,
7  https://www.ice.gov/news/releases/ice-operations-between-feb-1-and-feb-6.     Media
8  coverage of immigration enforcement may have heightened in the wake of recent ICE
9  shootings, but the media and public were certainly attentive to the surge of immigration
10 enforcement in the first month of Trump's second presidency.
11        The government further claims that ICE raids are not relevant because Mr. Garcia
12 was not arrested during such a raid. That fact is not disputed. But the prevalence of ICE
13 arrests still bears on the central issue in this case: Mr. Garcia's state of mind at the time
14 of his arrest. The context in which ICE raids were mentioned at the first trial illustrates
15 the point. Defense counsel argued: "Why is [Mr. Garcia] so nonchalant, so unconcerned
16 about his encounter with the deportation officers? Why when he's walking down those
17 stairs at 7:00 o'clock in the morning and there's a stranger sitting in a car pointed directly
18 at his stairwell watching him come down is he so unconcerned? Especially in this day
19 and age with all of our ICE raids. . . .He would be worried. He would be concerned. But
20 he wasn't. Because he didn't understand he was unlawfully in the United States." Trial
21 Tr. Day 3, at 506:24–507:8. The government did not object to this argument. It was
22 appropriate comment on the evidence.
23        The jury heard from multiple witnesses that Mr. Garcia lived in an area of Phoenix
24 and an apartment complex with a large immigrant population. *See, e.g.*, Trial Tr. Day 1,
25 196:6–7 (SA Farley confirming it was "[a]n area with a large Latin American
26 population."); Trial Tr. Day 2, 236:7–9 (SA Farley confirming that the "complex . . . takes
27 a tolerant posture toward undocumented people.") They also heard that many of Mr.
28 Garcia's neighbors had disappeared due to ICE actions. The following example is from

the testimony of Rocio Nevarez: "Q. Recently you've seen a significant drop in occupancy? A. Yes. Q. And that's due to immigration enforcement? A. Yes. Q. Many Latin American residents have abandoned their apartments? A. Yes. Q. And you learn after the fact that they were deported or left voluntarily? A. Exactly." Trial Tr. Day 2, at 371:21–372:5; see also Trial Tr. Day 3, 453:1–4 (Testimony of Sonia Martinez: "Q. You've seen a recent drop in occupancy recently due to ICE immigration enforcement, we heard that from Ms. Nevarez yesterday, do you agree? A. Yes. Uh-huh. A lot.") The jury could infer that Mr. Garcia would have been aware of these events in his community at the time of his arrest. Had he believed that he was unlawfully in the U.S., as defense counsel argued, he would have behaved differently.

The government seems to take particular issue with the term "raid." But dislike of the word does not make it unfairly prejudicial. The government itself commonly uses "raid" to refer to certain law enforcement actions. *See, e.g.*, *Justice Department Highlights DEA Drug Seizures for First Half of 2025, Successful Operations Over the Last Several Weeks*, U.S. Department of Justice Office of Public Affairs; https://www.justice.gov/opa/pr/justice-department-highlights-dea-drug-seizures-first-half-2025-successful-operations-over ("DEA and its local partners seized machinegun conversion devices, AR-style pistols and fentanyl pills in a ***raid*** that dismantled a multi-state poly-drug operation."); *Major Mexican Narcotrafficker Sentenced to Nearly 20 Years in Prison*, U.S. Department of Justice Office of Public Affairs, https://www.justice.gov/opa/pr/major-mexican-narcotrafficker-sentenced-nearly-20-years-prison ("U.S. law enforcement targeted Perez Cazares's Los Angeles-based distribution network, ***raiding*** three stash houses . . . .") (emphases added). Certainly, the Department of Justice itself would not promote a term that is "highly prejudicial to the government." Dkt. 109, at 2. That certain raids have received negative press does not make the term inherently prejudicial. If Rule 403 was meant to sweep so broadly, then it would also prohibit language such as "illegal" and "alien," which could degrade Mr. Garcia and other similarly situated people.

"In order to exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *United States v. Mixon*, 2015 WL 13849026, at *1 (D. Ariz. Oct. 14, 2015). Although the government's motion pertains to argument, not evidence, the same principle applies. As the first trial demonstrates, the government cannot show that mentioning ICE raids would violate Rule 403 in all possible scenarios. The motion is "'premature and presents vague challenges to [defense counsel's] style of argument." *Manion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262-PHX-DWL, 2019 WL 3718951, at *7 (D. Ariz. Aug. 7, 2019) (citation omitted).[1] It should be denied.

Respectfully submitted: February 12, 2026.
JON M. SANDS
Federal Public Defender

 s/Laura Lynn Sandoval-Green
LAURA LYNN SANDOVAL-GREEN
MICHAEL S. RYAN
Assistant Federal Public Defenders

---

[1] It is difficult to discern what the government means by "ICE-related violence." Dkt. No. 109, at 2. The request to ban any such reference should also be denied as premature and vague.